1  ALEXIS WILSON BRIGGS, SBN #251688
   506 Broadway
2  San Francisco CA 94133
   Telephone: 415/986-5591
3  email: Alexis@Pier5Law.com

4  Attorney for Defendant,
   CHRISTOPHER QUANG VO

5

6

7              UNITED STATES DISTRICT COURT

8            NORTHERN DISTRICT OF CALIFORNIA

9                  SAN JOSE DIVISION

10

   UNITED STATES OF AMERICA,      11-CR-00471-JF
11
           Plaintiff,          OBJECTION TO PRETRIAL
12                             SERVICES RECOMMENDATION AND
                               NOTICE OF MOTION AND MOTION TO
       v.                      MODIFY CONDITIONS OF RELEASE
13
   CHRISTOPHER QUANG VO,
14
                               Date: February 17, 2012
           Defendant.          Time: 9:30 a.m.
15  _____/   Magistrate: Judge Paul Singh Grewal

16      Defendant Christopher Vo, by and through his attorney

17  Alexis Wilson Briggs, hereby moves for the court to deny the

18  request filed by Pretrial Services on February 1, 2012, and to

19  modify Mr. Vo's pre-trial release conditions.

20      This motion is grounded in the First and Fourth Amendments

21  to the United States Constitution and 18 U.S.C. § 3142, and is

22  based upon this notice and motion, the accompanying memorandum

23  of points and authorities, as well as all other applicable laws,

24  the files and records of this case, and upon such evidence as

25  may be adduced at the hearing of this motion.

26  Dated: February 9, 2012

27                          /s/ ALEXIS WILSON BRIGGS
                         ALEXIS WILSON BRIGGS
28                       Attorney for Defendant
                         CHRISTOPHER QUANG VO

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  ALEXIS WILSON BRIGGS, SBN #251688
   506 Broadway
2  San Francisco CA 94133
   Telephone: 415/986-5591
3  email: Alexis@Pier5Law.com

4  Attorney for Defendant,
   CHRISTOPHER QUANG VO

5

6

7                UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10

   UNITED STATES OF AMERICA,      11-CR-00471-JF
11
           Plaintiff,
12                                 MEMORANDUM OF POINTS AND
       v.                          AUTHORITIES IN SUPPORT OF
13                                 OBJECTION TO PRETRIAL
   CHRISTOPHER QUANG VO,           SERVICES RECOMMENDATION AND
14                                 NOTICE OF MOTION AND MOTION TO
           Defendant.              MODIFY CONDITIONS OF RELEASE
15  _____/

16                      INTRODUCTION

17      Prior to the exchange of any discovery or meaningful review

18  of the strength of the evidence against the defendants, a

19  stipulated agreement regarding the conditions of release was

20  negotiated between the parties based solely on the violations

21  alleged in the indictment. But for the recent request by

22  pretrial services, this agreement would have likely continued

23  undisturbed. In light of the recent request by Pretrial Services

24  in the Northern District of California to "use any appropriate

25  method available to monitor the defendant's computer usage" and

26  afford Pretrial Services "discretion to allow the defendant to

27  be present," counsel submits the following in its request that

28  the restrictions to the use of Twitter and IRC be lifted in

1  their entirety.

2       Instead, a narrowly tailored procedure for scanning the

3  defendant's use of a LOIC (Low Orbit Ion Cannon) is the only

4  computer related condition of release which comports with the

5  controlling legal standards for conditions of release. This

6  scanning can be accomplished through the use of a portable thumb

7  drive which contains software which can be targeted to scan for

8  specific usage and would establish consistency across all

9  districts.[1] A modification of both the prohibited computer usage

10  and the methods authorized to ensure compliance is necessary to

11  protect against unreasonable infringements of the First and

12  Fourth Amendments, as well as other relevant protections the

13  defendant is entitled to prior to conviction. Great care must be

14  taken to favor the assumption of innocence until proven guilty

15  over monitoring in the name of efficiency; particularly where,

16  as here, significantly less invasive conditions are available.

17                        <u>PROCEDURAL HISTORY</u>

18       On July 13, 2011, an Indictment was filed against the 14

19  defendants alleging violations of 18 U.S.C § § 1030(b),

20  (c)(4)(A)(i)(I) (Conspiracy) and 18 U.S.C. § §1030(a)(5)(A),

21  (c)(4)(A)(i)(I), (c)(4)(B)(I) (Intentional Damage to a Protected

22  Computer). "No Bail" warrants were issued as to all 14

23  defendants. On July 19, 2011, Mr. Vo was brought before a

24  Magistrate in the Federal District Court of Massachusetts; he

25  was released on certain conditions and ordered to appear in the

26  Northern District of California for arraignment on September 1,

27

28       [1]Other counsel will submit briefing on this issue to the
court.

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1   2011. That release was conditioned upon an agreement to a
2   consensual search of any computer in his care and consent to
3   computer monitoring software. No bail or other bonds were
4   required for securing his release.
5       On September 1, 2011, Mr. Vo appeared for arraignment
6   before the Court and agreed to a modification of conditions of
7   release as negotiated between the government and defense
8   counsel. That agreement was narrowly tailored to address the use
9   of Twitter and IRC and required Pretrial Services to conduct any
10  scanning of the computers in the presence of the defendant. In
11  the Indictment only IRC is mentioned and it specifically avers
12  that the use of the LOIC (rather than the use of IRC) was the
13  program used to allegedly violate various statutes.
14      On February 1, 2012, Pretrial Services Officer Jaime
15  Carranza filed a memorandum requesting a modification of the
16  conditions of release in order to allow scanning outside of the
17  defendant's presence and to use "any appropriate method
18  available" to monitor the defendants "computer usage."
19                          ARGUMENT
20      Pursuant to 18 USCS § 3142(c)(1)(B), prior to conviction
21  the defendant may only be "subject to the least restrictive
22  further condition, or combination of conditions, that such
23  judicial officer determines will reasonably assure the
24  appearance of the person as required and the safety of any other
25  person and the community."
26      Prior to submission of a waiver of appearance, Mr. Vo
27  arranged for his own transportation to appear in court and it
28  has therefore been established that he will appear as required

before the court. The Massachusetts District Court apparently

agreed, as evidenced by his release without requiring any bond;

a well-founded decision insofar as he has fully complied with

those and all other orders by the Court and Pretrial Services.

Despite issuing no bail warrants, the government has at no

time questioned whether the defendant will appear as required.

Therefore, the only remaining justification of computer related

conditions of release must be to serve "the safety of any other

person and the community." Conditions designed to protect the

community must be justified by an individualized showing that

the defendant "poses a heightened risk of misbehaving;" the

government may not rely on the fact of arrest alone or a

generalized law enforcement interest. See <u>United States v.

Scott</u>, 450 F.3d 863, 874 (9th Cir. 2006) (warrantless search and

drug testing were invalid conditions for pretrial release).

The factors to be considered in selecting conditions of

release are provided by 18 USCS § 3142(g), which states that

> "[t]he judicial officer shall, in determining whether there
> are conditions of release that will reasonably assure the
> appearance of the person as required and the safety of any
> other person and the community, take into account the
> available information concerning--
>    (1) the nature and circumstances of the offense charged,
> including whether the offense is a crime of violence, a
> violation of section 1591 [18 USCS § 1591], a Federal crime
> of terrorism, or involves a minor victim or a controlled
> substance, firearm, explosive, or destructive device;
>    (2) the weight of the evidence against the person;
>    (3) the history and characteristics of the person,
> including--
>      (A) the person's character, physical and mental
>      condition, family ties, employment, financial
>      resources, length of residence in the community,
>      community ties, past conduct, history relating to drug
>      or alcohol abuse, criminal history, and record
>      concerning appearance at court proceedings; and
>      (B) whether, at the time of the current offense or
>      arrest, the person was on probation, on parole, or on
>      other release pending trial, sentencing, appeal, or

1    completion of sentence for an offense under Federal,
     State, or local law; and
2         (4) the nature and seriousness of the danger to any
     person or the community that would be posed by the person's
3    release."

4         Here, these charges are obviously not the sort of offense

5    that calls for severe restrictions in the name of safety insofar

6    as the allegations do not include any allegations of violence,

7    sex trafficking of children (i.e. a violation of 18 U.S.C. §

8    1591), terrorism, minor victims, controlled substances,

9    firearms, explosives, or destructive devices. Likewise, Mr. Vo's

10   history and characteristics contain no facts which support

11   conditions of release relating to computer usage insofar as this

12   is his first contact with law enforcement. Therefore, the only

13   two factors which may be relied upon to impose conditions of

14   release are "the weight of the evidence against the person" and

15   "the nature and seriousness of the danger to any person or the

16   community."

17        As to the first of these, the weight of the evidence, at

18   this stage in discovery the defense is left to assume that the

19   government presented evidence in support of each of the elements

20   to a grand jury. Assuming that this is the case, the indictment

21   states in great detail that the program at issue in the criminal

22   conduct was a "Low Orbit Ion Cannon" ("LOIC") which is "an open

23   source computer program that was originally designed as a

24   network stress testing application, but which was also used as a

25   tool by DdoS attackers. Attackers used LOIC to send extremely

26   large amounts of packets or requests over a network..."

27   (Indictment, p. 2, Docket Entry 1.)  The indictment indicates

28   that one of the methods of using a LOIC is to "connect" to an

1  "Internet Relay Chat Server" ("IRC" Server) which allows a third

2  party to "control" the LOIC.

3       On its face it is plain that there is no mention of Twitter

4  in the Indictment, which leaves defense counsel and the court to

5  assume that no such evidence was presented to the grand jury.

6  Insofar as no discovery indicating an abuse of Twitter or use of

7  it to "endanger" the community has been provided, it is apparent

8  that the current conditions restricting use of Twitter is over

9  broad. Although IRC is mentioned in the indictment, there is no

10 allegation of inappropriate use or abuse of IRC, only in the

11 unlawful use of LOIC in combination with IRC. This is loosely

12 equivalent to "mass mailings" rather than sending an envelope in

13 the U.S. Mail. It is not abuse of IRC, but rather the

14 application of the separate LOIC program that is alleged to have

15 caused damage.

16      The government has alleged in court that Twitter and IRC

17 are two of the methods of communication used in the commission

18 of the offense, however these facts are not included in the

19 indictment and should be given little weight. The indictment

20 alleges conspiracy, which may reasonably lead to restrictions on

21 communications amongst the alleged conspirators; which are

22 presumably the other 13 defendants charged in the indictment.

23 Use of IRC and Twitter ought not be restricted as means of

24 communication where no allegations have been made which indicate

25 unlawful usage of those programs. By analogy, conspirators' use

26 of the U.S. Mail rather than Fed Ex would not result in a ban on

27 the usage of the U.S. Mail; only a condition that they not use

28 any means of communication to contact one another. It is equally

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1 nonsensical and baseless to ban use of IRC and Twitter based

2 upon the allegation of conspiracy.

3     As to the evidence relating to the second charge, Judge

4 Jensen opined that the government has a duty to return evidence

5 it obtained pursuant to the search warrants which does not

6 relate to the offense and is therefore not entitled to retain.

7 This issue is being litigated elsewhere, but for these purposes

8 is significant because it (1) indicates the government's own

9 inability or unwillingness to isolate the relevant evidence to

10 assess its "weight" and (2) Pretrial Services' request

11 essentially would permit warrantless searches of computers to

12 monitor that same "unrelated" information the court has opined

13 that the government must return.

14     Therefore, the factor relating to the "weight of the

15 evidence" heavily tips the scales of justice away from any

16 computer related conditions of release. However, should the

17 court be concerned about danger to the community *if* the

18 indictment allegations are indeed true, the lack of evidence

19 should favor the least restrictive computer related conditions

20 available and those conditions should be narrowly tailored to

21 the program involved in the allegedly unlawful conduct.

22     The final § 3142(g) factor relates to the nature and

23 circumstances of the offense and whether they indicate any

24 danger to any person or the community. The Senate Report

25 relating to the Bail Reform Act of 1984 states:

26     "The concept of defendant dangerousness is described
       throughout this chapter by the term "safety of any other
27     person or the community." The reference to safety of any
       other person is intended to cover the situation in which
28     the safety of a particular identifiable individual, perhaps
       a victim or witness, is of concern, while the language

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  referring to the safety of the community refers to the
   danger that the defendant might engage in criminal activity
2  to the detriment of the community. The Committee intends
   that the concern about safety be given a broader
3  construction than merely danger of harm involving physical
   violence."

4

5  (S.Rep. No. 225, 98th Cong., 1st Sess. 5, reprinted in 9A, 1984

6  U.S. Code Cong. & Adm. News, Legislative History at 12-13.)

7       If the government is alleging that the danger is that this

8  defendant might commit the same offense alleged, that would only

9  require the defendant to refrain from usage of LOIC insofar as

10 that was the only "harmful" computer usage alleged in the

11 indictment. No particularized need to protect individuals has

12 been asserted by the government; moreover possible witnesses

13 have so far been protected through redaction of discovery and

14 protective orders have been anticipated to be utilized when

15 deemed necessary. Regardless, use of IRC and Twitter do not pose

16 any danger to any individual anymore than use of E-mail or a

17 telephone would be. The concern that the defendants might engage

18 in criminal activity is addressed above, insofar as the criminal

19 conduct alleged here is unlawful usage of LOIC rather than

20 unlawful usage of Twitter or IRC.

21      The only remaining possible justification for restricting

22 the use of Twitter or IRC must stem from a generalized concern

23 of further criminal activity. This, however, is not a

24 permissible basis for restricting the computer usage of the

25 defendants, particularly where the restriction implicates First

26 Amendment rights and the monitoring implicates Fourth Amendment

27 protections. The Ninth Circuit has been clear that such

28 generalized crime prevention is not permitted to restrict the

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  rights of *pre-trial* releases:

2      "The government's first identified purpose, protecting the
       community, presumably means protecting it from the criminal
3      activities of pre-trial releasees generally... The dissent
       points out correctly that the "'government's interest in
4      preventing crime by arrestees is both legitimate and
       compelling,'" ... Crime prevention is a quintessential
5      general law enforcement purpose and therefore is the exact
       opposite of a special need."

6

7  United States v. Scott, 450 F.3d 863, 870 (9th Cir. 2006). The

8  court emphasized that this "legitimate and compelling" interest

9  in preventing crime is always present. Ibid., (citing United

10 States v. Restrepo, 946 F.2d 654, 674 (9th Cir. 1991) (en banc)

11 (Norris, J., dissenting) ("It goes without saying that the

12 government has a compelling interest in protecting the community

13 from crime," describing the government's interest as a "general

14 concern with crime prevention" (citing United States v. Salerno,

15 481 U.S. at 749).) Therefore such general concerns cannot

16 support further pretrial restrictions.

17     The least restrictive method to insure the 14 defendants do

18 not communicate is not a ban on the use of the telephone, U.S.

19 Mail, E-mail, Facebook, Diaspora, Google+, Twitter, IRC, etc.

20 Instead, the presumption is that *if* Pretrial Services learns

21 that some method of communication was used between the

22 defendants, *then* a violation of the conditions of release would

23 be filed. The "efficient" method to ensure communication does

24 not happen without avoiding detection is to monitor all

25 telephone calls, all mail, and all computer usage; i.e. all

26 speech and all writing should be monitored in "real time." The

27 recommendation offered by Pretrial Services attempts to justify

28 this by warning that it is "easy for a defendant to violate" the

1   current conditions. Other Pretrial Services officers consider

2   the ongoing threat of surprise inspections to be sufficient

3   deterrent to such tactics, which indicates a willingness to

4   assume innocence until finding evidence to the contrary. Such

5   "real time" monitoring is tantamount to a continual Fourth

6   Amendment violation which ought to require a *very* high showing

7   of *specific* danger before it is imposed.

8       In illustration of how high a threshold is set before

9   restrictions may be placed, the case law is largely devoted to

10  *convicted* child pornographers and even in those cases the

11  restrictions on usage are narrowly tailored. These cases are the

12  sort specifically called out in 18 USCS § 3142(g) insofar as

13  they involve minor victims. Indeed, there cannot be very many

14  offenses one can commit through the use of a computer that pose

15  a greater danger to the community, and yet those cases do not

16  include expansive and invasive monitoring *pretrial*. Instead, the

17  conditions are part of supervised release after the presumption

18  of innocence has evaporated, with one district court exception

19  which will be discussed below. Even following convictions, the

20  courts are very specific regarding the need for particularity,

21  limited purpose, etc.

22      In those cases the Ninth Circuit has addressed how broad

23  the term "monitoring software" can be:

24      "We have acknowledged that "monitoring software and/or
        hardware takes many forms, with greatly varying degrees of
25      intrusiveness." United States v. Sales, 476 F.3d 732,
        737-38 (9th Cir. 2007); see Lifshitz, 369 F.3d at 191-92
26      (surveying methods of monitoring and finding that "products
        and techniques currently available diverge vastly in their
27      breadth, and in their implications for computer users'
        privacy"). Some monitoring software, for instance, records
28      all computer-based activities, "including those performed
        locally without connection to the Internet or any

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

network--such as . . . word processing activities."
<u>Lifshitz</u>, 369 F.3d at 191. Other monitoring targets only
Internet related activity, by, for example, "rel[ying] on
records from the Internet Service Provider ('ISP'), through
whom an account user's requests for information or e-mails
are routed." <u>Id</u>. Technologies, moreover, vary within these
categories: "[S]ome software focuses attention upon
specific types of unauthorized materials, whereas other
kinds monitor all activities engaged in by the computer
user." <u>Id</u>.

<u>United States v. Quinzon</u>, 2011 U.S. App. LEXIS 14160, *12-13 (9th
Cir. 2011) (holding that the term "monitoring" is too broad
generally, but in this case is interpreted not to include "snap
shots" which would capture activity not related to viewing or
obtaining child pornography.) This illustrates the grave danger
of such limitless terms being used in Pretrial conditions of
release relating to what kind of monitoring is authorized.

In addition to the form of monitoring, these cases indicate
the need to narrowly tailor the restrictions to focus the
monitored activities on the specific danger. See e.g. <u>United
States v. Riley</u>, 576 F.3d 1046 (9th Cir. 2009) (holding that
"[t]he blanket prohibition on use of a computer to access
"material that relates to minors" is a greater deprivation of
liberty than reasonably necessary to promote the goals of
supervised release" for a defendant convicted of soliciting
child pornography); <u>United States v. Rearden</u>, 349 F.3d 608, 619-
620 (9th Cir. 2003) (restricting possession of "any materials
depicting sexually explicit conduct as defined in 18 U.S.C. §
2256(2)"); <u>United States v. Cope</u>, 527 F.3d 944, 958 (9th Cir.
2008). Even in cases where the defendant was convicted of
*producing* child pornography, where the harm to the public and to
individual victims is grave and apparent, the court only

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  restricted him from possessing "any form of pornography,

2  sexually stimulating material, or sexually oriented material."

3  United States v. Boston, 494 F.3d 660, 668 (8th Cir. 2007)

4  (imposing a life-long restriction).

5      In United States v. Brown, 2008 U.S. Dist. LEXIS 73715, *3,

6  the Arizona District Court did approve computer restrictions

7  pretrial, again in a child pornography case, but even there the

8  restriction was limited to "'photographs or videos of sexually

9  explicit conduct as defined by 18 U.S.C. § 2256(2)' pending an

10 evidentiary hearing on the nexus, if any, between viewing lawful

11 photographs or videos of adults engaging in sexually explicit

12 conduct and child pornography and/or unlawful sexual conduct."

13 Therefore, it appears that any pretrial restrictions beyond

14 those proposed, ought to be pursuant to an evidentiary hearing

15 rather than representations made to the court by Pretrial

16 Services, or even by the government.

17     All of these cases illustrate that the restrictions must

18 focus on *what* is being accessed rather than the method of

19 access. Therefore even if we were discussing appropriate

20 conditions of supervised release after conviction of the charged

21 conduct, only the specific program LOIC, but not the general

22 communication method of IRC, would be reasonably related to the

23 conduct. Beyond the very different procedural posture, the cases

24 are obviously and unarguably distinguishable insofar as they

25 dealt with on-going predatory conduct. Here, there are 14

26 defendants who are alleged have engaged in politically motivated

27 activity, were released without bail or bond, and have

28 substantially complied with conditions of release even where

**LAW OFFICES**
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

1  they are overbroad. In sum, if probation cannot "use any
2  appropriate method to monitor the defendant's computer usage"
3  following convictions for offenses which harm minors, then
4  Pretrial Services cannot do so here where First Amendment rights
5  are implicated and where the prohibited conduct can be
6  effectively prevented by narrowly tailoring the restriction to
7  LOIC.

8      Lastly, Pretrial Services attempts to reassure the court
9  and defendants that any information will be kept confidential.
10 This is inadequate and does not meet the "least restrictive
11 method" requirement; it is at best the most convenient method
12 for Pretrial Services based on its undisclosed conversations
13 with other Pretrial Services offices. It is also not necessary
14 insofar as defense counsel is now aware of scanning programs
15 which can be narrowly tailored and transported on a thumb drive.
16 Whether or not Pretrial Services keeps information confidential
17 does not matter one iota in the face of the clear mandate that
18 conditions of release be tailored with the protection of the
19 defendant in mind, second only to the safety of the community.
20 Privacy does not mean that it will be kept secret, it means that
21 it will not be known *at all* unless it is necessary to further an
22 individualized compelling reason which serves the safety of the
23 community.

24                    CONCLUSION

25     Simply put, unproven allegations of damage caused by the
26 use of LOIC do not provide a sufficient basis to permit Pretrial
27 Services to "monitor defendant's computer usage" nor to search
28 the defendant's computer outside their presence. Generalized

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

14

1  concerns of crime prevention without any nexus to this defendant

2  or this indictment are not sufficient to negate the calculus of

3  the remaining factors which indicate that the safety of the

4  community can be assured through less restrictive methods.

5      Defense counsel has confirmed that the Pretrial Services

6  officer monitoring Mr. Vo in Massachusetts has agreed to use a

7  thumbdrive loaded with software which can be programmed to scan

8  the computer for specific programs and information. Given the

9  short time frame of the briefing schedule, the particulars still

10 need to be determined. However, the availability of this less

11 restrictive method (rather than real-time monitoring or removing

12 the computers from the defendant's presence) necessitates a

13 denial of the request before the court.

14     Defense counsel therefore requests that additional time be

15 allotted to determine the scope of the scanning software, the

16 logistical issues involved in providing the program to all the

17 Pretrial Services officers, and provide any necessary training

18 rather than ordering an obviously unreasonable infringement of

19 the defendant's First and Fourth Amendment rights. Additionally,

20 defense requests that the defendant's computer usage and the

21 resultant scans be limited to use of LOIC rather than Twitter

22 and IRC in light of the factors discussed above.[2]

23 Dated: February 9, 2012

                         /s/ ALEXIS WILSON BRIGGS
24                       ALEXIS WILSON BRIGGS
                         Attorney for Defendant
25                       CHRISTOPHER QUANG VO

26

27

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331

28     [2]A proposed order will be drafted and submitted prior to
the court date after additional investigation into the available
monitoring methods has been completed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
506 BROADWAY
SAN FRANCISCO
(415) 986-5591
Fax: (415) 421-1331